---

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

---

| | |
|---|---|
| **MIGUEL CARRANZA and AMELIA SANCHEZ, natural parents of Jesua M.V. Carranza-Sanchez, deceased,**<br><br>　　　　**Plaintiffs,**<br><br>**vs.**<br><br>**UNITED STATES and John and Jane Does I-X,**<br><br>　　　　**Defendants.** | **MEMORANDUM DECISION AND ORDER CERTIFYING QUESTION TO UTAH SUPREME COURT**<br><br>Case No. 2:07CV291DAK<br><br>Judge Dale A. Kimball |

---

This matter is before the court on two interrelated motions: (1) Defendant United States of America's Motion in Limine to Exclude From Trial All Evidence Regarding Plaintiffs Miguel Carranza and Amelia Sanchez's Damages for Wrongful Death; and (2) Plaintiffs' Motion to Certify Question of Law to the Utah Supreme Court.  The court held a hearing on the motions on May 12, 2009.  At the hearing, Plaintiffs were represented by Brett R. Boulton and Defendant was represented by Amy J. Oliver and Jeffrey E. Nelson.  After careful consideration of the parties' memoranda and arguments made at the hearing, as well as the facts and law relevant to the present motions, the court enters the following Memorandum Decision and Order.

**BACKGROUND**

Between December 28, 2005, and April 19, 2006, Plaintiff Amelia Sanchez received prenatal care at the Mountainlands Community Health Center in Provo, Utah.  Mountainlands and its contracted physicians and employees are deemed to be employees of the United States government by the Health Resources and Services Administration and Bureau of Primary Health Care, in accordance with Section 224(g) of the Public Health Service Act, 42 U.S.C. § 233(g) as amended by the Federally Supported Health Centers Assistance Act of 1995 (P.L. 104-73), for purposes of the Federal Tort Claims Act of 1946 ("FTCA"), 28 U.S.C. § 1346.

On April 19, 2006, Sanchez went to the Labor and Delivery Department at Utah Valley Regional Medical Center where it was determined that the fetus exhibited no movement or heartbeat.  Sanchez's labor was induced, and she gave birth to a stillborn male on April 20, 2006.

Factually, the parties dispute whether medical negligence occurred in this case.  Plaintiffs argue that the fetus died because he was post mature, meaning that the baby was alive up to and beyond the time that he reached full term.  Plaintiffs allege that medical professionals at Mountainlands breached the applicable standards of care by not monitoring her condition more closely in her final weeks of pregnancy and not inducing labor at her doctor's visit on April 14, 2006.  At that visit, Sanchez had lost her mucous plug and informed her doctor that she was experiencing vaginal bleeding and erratic contractions.  Her doctor, however, did not induce her.

The United States' expert witness, Dr. Later, states that "the cause of stillborn was a nuchal cord event, which unfortunately is unavoidable."  Dr. Later states that the loss of a mucous plug and irregular contractions are common several days before delivery and are not an indication to proceed with an immediate induction.  The expert's report notes that Sanchez called

2

Mountainlands three days after her doctor's visit, on April 17, 2006, complaining of contractions and discharge.  She was told to go to Labor & Delivery, but she did not go until April 19, 2009.  Dr. Later opines that even had she gone to the hospital on April 17, findings may have been normal and the cord accident may have still occurred later as it did.  He states that cord accidents are not age-related and cannot be predicted.

Plaintiffs present action against the United States is brought pursuant to the FTCA.  *See* 28 U.S.C. § 1346 *et seq.*  The FTCA authorizes actions against the United States for damages caused by the negligence of government employees under circumstances where a private person would be liable under state law.  28 U.S.C. § 1346(b).  The United States is liable to the same extent as a private individual in accordance with the law of the place where the act or omission occurred.  28 U.S.C. § 1346(b)(1).

On October 12, 2006, in accordance with the regulations implementing the FTCA, Plaintiffs filed the requisite "Standard Form 95–Claim for Damage, Injury, or Death" with the Department of Health and Human Services ("HHS").  *See* 28 C.F.R. § 14.2(b)(1).  The Standard Form 95 is designed for any type of claim that can be asserted under the FTCA.  The Standard Form 95, therefore, provides boxes or sections for the claimant to state the nature and extent of the claim.  The boxes describing the claims are then followed by boxes allowing the claimant to identify the amount of damages sought in connection with the claim.

The relevant section provided on the Standard Form 95 for a description of the claim relevant in this case was pre-printed "personal injury/wrongful death."  Under this section, Plaintiffs stated that the nature and extent of the claim was: "Death of Claimaint's unborn son, Jesua Miguel Valentin Carranza-Sanchez, as a result of medical malpractice.  See Addendum."

Plaintiffs attached a four-page Addendum providing a narrative of the nature and extent of their claim.  Plaintiffs' Addendum states: "Notice is hereby given by Amelia Sanchez and Miguel Carranza . . . of their intent to commence a medical malpractice action against Mountainlands Community Health Center" and the healthcare professionals providing Sanchez prenatal care who were deemed employees of Mountainlands.  The Addendum provides a paragraph identified as "Nature of Claim."  Under this heading, Plaintiffs state: "Sanchez and Carranza's claim is based upon the negligent care of the above named health care providers and health care facility and those who may have assisted them in treating Sanchez and her unborn child."  The Addendum then gives a factual description of Sanchez's medical conditions, prenatal care, and delivery.  Plaintiffs state that because there was a nuchal cord entanglement, which consisted of the cord wrapping one time around the baby's throat, the doctor told Plaintiffs' that an autopsy would not be necessary.  Pathology examined the baby and the placenta and observed no fetal anomalies.

Plaintiffs' Addendum concludes with a paragraph entitled "Nature of Injuries and Damages."  Under this heading, Plaintiffs state that as a result of the medical negligence, "Plaintiffs, as parents of the deceased, have suffered the injuries described above, including funeral expenses and general damages of pain and suffering, loss of affection, loss of companionship, and loss of happiness of association."

Under the section for "Amount of Claim" on the Standard Form 95, the form provides boxes for "property damage," "personal injury," "wrongful death," and a "total amount."  In this damages section, Plaintiffs identified $1,000,000 of damages in the "wrongful death" box, and $1,000,000 in the "total amount" box.  Plaintiffs did not list any damages under "personal

injury."

After Plaintiffs submitted their Standard Form 95, the claim was deemed denied because six months passed without a formal denial by HHS.  The denial of their claim allowed Plaintiffs to bring their action in this court.  Plaintiffs' First Amended Complaint alleges only one cause of action entitled medical negligence.  Plaintiffs allege that Defendants failed "to reasonably and adequately provide medical care to Plaintiff Sanchez during her pregnancy."  First Am. Compl. ¶ 26.  Although the claim is styled as a medical negligence claim, many of the allegations and requested damages refer to a wrongful death claim.  Plaintiffs allege that

> [a]s a direct, proximate, and foreseeable consequence and cause of the aforementioned negligence, acts, failures to act, refusals to act, and breaches of duty on the part of Defendants, Plaintiffs, as the surviving natural parents of the deceased, have personally suffered and will continue to suffer loss of companionship, loss of association, loss of advice, loss of counsel, loss of comfort, lost of happiness of association, and other noneconomic and general damages for the wrongful death of their child in such amounts as the Plaintiffs will establish at the trial hereof.  Plaintiffs are entitled to recover all economic and noneconomic damages, together with such other damages as may be provided under Utah's wrongful death statute of § 78-11-7 and other applicable law, from the Defendants.

*Id.* ¶ 28.  Plaintiffs prayer for relief seeks damages against Defendants: "a. for general damages for Plaintiff's conscious and unconscious pain and suffering from the date of the death of their child in a reasonable amount;" "b. for general and noneconomic damages for the wrongful death of their child in a reasonable amount;" and  "c. for special damages for medical, funeral, and burial expenses incurred as a result of injuries to and the wrongful death of their child as proven."

## ANALYSIS

Defendant's motion in limine asks this court to preclude Plaintiffs from testifying as to any alleged damages of loss of companionship, loss of association, loss of advice, loss of comfort, loss of happiness of association, and other noneconomic and general damages for the wrongful death of their unborn child because none of these damages are cognizable under Utah law.  Defendant argues that the court should exclude any evidence related to damages associated with a wrongful death cause of action because there is no claim of action under Utah law for the wrongful death of an unborn child.

Plaintiffs, however, contend that this court should recognize a cause of action for the wrongful death of an unborn child and allow Plaintiffs to testify to the associated damages. Plaintiffs brought a Motion to Certify Question of Law to the Utah Supreme Court asking this court to certify the question of whether Utah's wrongful death statute allows a wrongful death cause of action for an unborn child.  Plaintiffs argue that the question presents a controlling issue of law in this case and there appears to be no controlling Utah law.  Plaintiffs ask this court to stay its ruling on Defendant's motion in limine until the Utah Supreme Court has acted on the order of certification.

Rule 41(a) of the Utah Rules of Appellate Procedure provides that "the Utah Supreme Court may answer a question of Utah law certified to it by a court of the United States when requested to do so by such certifying court . . . if the state of the law of Utah applicable to a proceeding before the certifying court is uncertain."  Utah R. App. P. 41(a).  The certification order must state the "question of law to be answered," "that the question certified is a controlling issue of law in a proceeding pending before the certifying court," and "that there appears to be no

6

controlling Utah law." *Id.* 41(c).  Courts have found that certification is appropriate "when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *State Farm Mut. Auto Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001).

As demonstrated by the parties competing motions, both parties in this case seek a determination of whether Utah law allows a wrongful death action for an unborn child prior to trial.   The court, therefore, must determine whether Utah law is uncertain on the issue of whether a cause of action exists for the wrongful death of an unborn child.

The Utah Supreme Court has recognized that "'the right of action to recover damages for death is not a common-law right, but is one created by statute.'"  *State Farm Mut. Auto. Ins. Co. v. Clyde*, 920 P.2d 1183 (Utah 1996) (quoting *Parmley v. Pleasant Valley Coal Co.*, 228 P. 557, 560 (Utah 1924)).  "The Utah wrongful death act was originally passed by the Territorial Legislature in 1874 to remedy the harsh effects of the common law rule which did not recognize wrongful death actions at all." *Behrens v. Raleigh Hills Hospital*, 675 P.2d 1179, 1184 (Utah 1983).  Under Utah's wrongful death statute, as it existed at the time of the case in question, "a parent or guardian may maintain an action for the death or injury of a *minor child* when the injury or death is caused by the wrongful act or neglect of another."  Utah Code Ann. § 78-11-6 (2006) *amended and renumbered by* Utah Code Ann. § 78B-3-102 (2008) (changing language from "may maintain" to "may bring") (emphasis added).

The dispute between the parties in this case focuses on the meaning of the term "minor child."  The statute does not define the term "minor child."  In interpreting a statute, courts "look

first to the statute's plain language to determine its meaning." *H.U.F. v. V.P.W.*, 203 P.2d 943,

951 (Utah 2009). When determining the meaning of a statute's plain language, "[i]t is presumed

that . . . the words and phrases were chosen carefully and advisedly." *Amax Magnesium Corp. v.

Tax Comm'n*, 796 P.2d 1256, 1258 (Utah 1990). Defendant argues that the plain language of the

wrongful death statute provides a wrongful death action for only a minor child, not an unborn

child. Plaintiffs, however, assert that a full-term unborn child could be considered a minor child

under the statute. There is no provision specifically excluding an unborn child from the

definition of minor child.

Defendant contends it is clear that the Utah Legislature did not intend for plaintiffs to

recover damages for the wrongful death of or injury to an unborn child because the legislature

omitted the words "unborn child" from the wrongful death statute. Defendant contrasts this

omission of "unborn child" in the wrongful death statute with legislature's use of the term

"unborn child" in other provisions of the Utah Code. Under Utah's probate code, "a parent may

represent and bind the parent's *minor or unborn* child if a conservator or guardian for the child

has not been appointed." Utah Code Ann. § 75-7-303(6) (emphasis added). Under Utah Code

Annotated Section 31A-22-627(3)(a)(i), an "emergency medical condition" is defined as "placing

the insured's health or, with respect to a pregnant women, the health of the women or her *unborn

child*, in serious jeopardy." (Emphasis added.) Also, under Utah's criminal code, a person

commits "criminal homicide if he intentionally, knowingly, recklessly, with criminal negligence,

or acting with a mental state otherwise specified in the statute, causes the death of another human

being, including an *unborn child* at any stage of its development" *Id.* § 76-5-201(1) (emphasis

added)).

Plaintiffs argue that if the legislature intended to hold individuals criminally responsible for the death of an unborn child, then it would logically and morally follow that the legislature also intended to hold individuals civilly responsible when their wrongful actions cause the death of an unborn child.  Plaintiffs contend that while the legislature has at times used the term "unborn child" to add clarity with respect to who is affected by certain laws, a failure to do so does not necessarily mean unborn children are not to be protected.

Plaintiffs assert that while there are instances of the term "unborn child" being specifically used by the legislature in other provisions of the Utah Code, there are also other provisions of the code demonstrating the legislature's commitment to protecting the rights of unborn children.   Plaintiff's specifically point to the preamble to the criminal code's abortion provisions, which states that "the state of Utah has a compelling interest in the protection of the lives of unborn children," and "[i]t is the intent of the Legislature to protect and guarantee to unborn children their inherent and inalienable right to life as required by Article I, Sections 1 and 7, Utah Constitution."  Utah Code Ann. § 76-7-301.1(2) and (3).

In reviewing a separate, but related, issue under Utah's Wrongful Death statute, the Utah Supreme Court stated that it did not need to "decide the more general question of whether the death of a fetus can ever provide the basis for maintaining an action under Section 78-11-6." *State Farm Mut. Auto. Ins. Co. v. Clyde*, 920 P.2d 1183, 1187 n.8 (Utah 1996).  In *Clyde*, the court analyzed whether an unborn child's grandparents had standing to bring a wrongful death action under the wrongful death statute.  *Id.* at 1185.  The *Clyde* court addressed this issue in the context of whether the grandparents were entitled to underinsured motorist benefits after the death of their minor daughter and her unborn child.  *Id.*

9

The *Clyde* court stated that "[b]ecause the legislature has authorized only the 'parent or guardian' of a minor child to maintain an action for the child's wrongful death, the Clydes may not maintain an action unless they qualify as the parents or guardians of [their daughter's] unborn child." *Id.* at 1185.  The Clydes asserted that because they provided their daughter's, "and therefore her unborn child's, sole means of support, they stood in loco parentis to the unborn child and should be treated as de facto parents or guardians under section 78-11-6." *Id.*  The court concluded that it did not need to look past the plain language of the statute "to conclude that the Clydes do not qualify as the parents or guardians of [their daughter's] unborn child." *Id.* at 1186.  The court found the term parent to mean only an immediate parent, not a grandparent. *Id.*

The *Clyde* court also supported its conclusion by reasoning that the legislature's "failure to expressly include persons standing in loco parentis within the class of potential plaintiff's under section 78-11-6 appears to have been an intentional rejection" because the legislature had "used the term 'in loco parentis' in several unrelated statutes." *Id.* at 1187.  The court found "that the legislature knew how to use the term 'in loco parentis' but chose not to do so in section 78-1-6 and therefore did not intend to allow persons standing in loco parentis to maintain an action for the wrongful death of a minor." *Id.*  The court concluded its analysis by explaining that "'[t]he fact that the result in some circumstances may be to unreasonably restrict the class of persons who can bring a wrongful death action is an argument for amendment of the statute, not for our ignoring its words.'" *Id.* (citation omitted).

Most relevant to the present case, the *Clyde* court then included its footnote stating that because the Clydes did not have standing to maintain an action for the wrongful death of their

unborn grandchild, it did not need to decide whether the death of an unborn child could ever provide the basis for a wrongful death action.  The court's footnote cites to two previous Utah Supreme court cases.  The court cited to *Webb v. Snow*, 132 P.2d 114, 119 (Utah 1942), in which the court found that no damages are available for the loss of an unborn child, and the dissent in *Nelson v. Peterson*, 542 P.2d 1075, 1079 (Utah 1975), criticizing *Webb*.

Defendant asserts that the Utah Supreme Court's decision in *Clyde* is consistent with its position that Utah law does not recognize a wrongful death action for an unborn child.  Plaintiffs, however, assert that the *Clyde* court's footnote clearly indicated that the question was not settled. The *Clyde* court's reasoning is similar to Defendant's reasoning in this case.   The plain language of the statute states only minor child and does not include unborn child.  The fact that the legislature used minor child or unborn child in other statutes and not in the wrongful death statute indicates that the legislature did not intend to include an action for unborn children under the wrongful death statute.  In addition, the argument for inclusion of unborn children under the wrongful death statute is an argument for an amendment of the statute, not for broadly interpreting its words or writing in words that are not present.

The court agrees that the Utah Supreme Court could apply the reasoning of *Clyde* to the question at hand.  The definition of minor child, however, does not appear to be as plain or clear as the definition of parent.  Also, significantly, the *Clyde* court chose to address whether the grandparents had standing to assert the cause of action instead of simply stating that no such cause of action existed under Utah law.  Additionally, the *Clyde* court's footnote indicates that the court does not consider the issue settled.  The court could have cited to *Webb* and *Nelson* for the proposition that the issue was settled, as Defendant suggests.  But, instead, the court cited to

*Webb* and *Nelson*'s dissent criticizing *Webb*.

In *Webb v. Snow*, 132 P.2d 114 (Utah 1942), in which the plaintiff brought an action for assault and battery that resulted in a miscarriage, the Utah Supreme Court stated:

> While injuries resulting in a miscarriage are actionable, and compensation may be awarded for the physical and mental sufferings by a woman who has a miscarriage by reason of injuries caused by the wrongful acts of others, damages are not awarded for "loss of the unborn child" itself.

*Id.* at 119.

In *Nelson v. Peterson*, 542 P.2d 1075, 1076 (Utah 1975), the plaintiff "appealed from an adverse judgment based in an action for the wrongful death of a full-term fetus together with damages for pain and suffering allegedly caused by the negligent care of plaintiff in connection with the delivery of her stillborn baby." *Id.* at 1076. The Utah Supreme Court found the plaintiff's appeal of the trial court's refusal to permit recovery for the wrongful death of a full-term fetus to be without merit as a result of Webb. *Id.* at 1077. The court found that the plaintiff could not complain about the trial court's instruction allowing her to be awarded compensation "for her mental distress even though the death of the fetus was not caused by a battery or by wilful misconduct." *Id.* But the court found the question of damages moot because the jury did not find the defendants negligent. *Id.* The court, however, stated that "[c]ertainly the death of a viable fetus should be considered as much a ground for damages as would a miscarriage. Whether or not it gives a different basis for recovery can be determined when liability has been found in a proper case." *Id.* at 1077-78.

The dissent in *Nelson* found the plaintiff's appeal well taken and criticized the majority

opinion's reliance on *Webb*.  *Id.* at 1079 (Maughan, J., dissenting).  The dissent stated that *Webb* was "not applicable for two reasons:  First, the operative facts are completely distinguishable; and we would not do an injustice to stare decisis for the reason that the concept advanced by that case is no longer a part of the weight of authority in this country."  *Id.* (Maughan, J., dissenting). The dissent further argued that there was "no moral, biological, or legal rationale for sustaining an outmoded, dry rule laced with the fictions of a bygone era."  *Id.*  (Maughan, J., dissenting). The court referred to an Oregon state case where the court "rejected the view that an unborn child has no judicial existence apart from its mother and cites those cases representing the weight of authority in this country sustaining the court's opinion."  *Id.* (Maughan, J., dissenting).

That the *Clyde* court would cite to *Webb* and the dissent in *Nelson* while stating that it need not determine whether the death of a fetus can ever provide the basis for a wrongful death action convinces this court that the Utah Supreme Court views the issue as unsettled.  As recognized by the dissent in *Nelson*, *Webb* is not necessarily controlling of the issue.  The *Webb* case involved an assault and battery claim, not a wrongful death claim.  As a result, the *Webb* court does not cite to or refer to the wrongful death statute.  And, factually, the *Webb* case involved a pregnancy at its very early stages, not a full-term fetus as in *Nelson* and the present case.  *Nelson*'s reliance on *Webb* as binding is, therefore, questionable.  And, the *Clyde* court's citation to *Nelson*'s dissent calls *Nelson*'s holding into question.

Moreover, unlike this case, the *Nelson* court was reviewing the issue after a jury had determined that the defendants were not negligent.  In this case, the court must determine whether evidence of damages relating to a wrongful death action can be presented at trial.  The court agrees with the parties that the issue should be determined prior to trial.  While Defendant

13

opposes certification of the question to the Utah Supreme Court, it does so only on the grounds

that the question of law is settled.  Defendant's motion in limine seeks the issue relating to

wrongful death damages to be determined prior to trial.  If the court were to wait to certify the

question until a determination was made as to medical negligence in this case, the court would

potentially be required to hold two trials in the matter.  Judicial economy, therefore, supports a

finding that the question should be certified and determined before the parties and court incur the

expenditures of time and money associated with trial.

Because the issue of whether Utah's wrongful death statute allows a wrongful death

action for an unborn child is controlling of the motion in limine pending before the court and the

court finds that there is no controlling Utah law, the court concludes that it is appropriate to

certify the question to the Utah Supreme Court.  This is an important issue of public policy and

will likely recur.  Moreover, certification of the issue "would further the interest of comity and

federalism by giving the Utah Supreme Court an opportunity to answer it in the first instance

should it elect to do so under Utah R. App. P. 41."  *See Ohio Cas. Ins. v. Unigard Ins. Co.*, 2009

WL 1160297 at *5 (10th Cir. April 28, 2009).

Defendant's motion in limine also raises the issue of whether plaintiffs can assert

damages other than wrongful death damages.  Plaintiffs argue that *Nelson* stands for the

proposition that evidence of the mother's mental anguish or suffering is admissible whether or

not the court finds that the unborn child is covered by Utah's wrongful death statute.  542 P.2d at

1077.  Defendants, however, argue that not only can Plaintiffs not recover damages for wrongful

death, they cannot recover any other damages related to a broader claim of medical negligence

because Plaintiffs' Standard Form 95 stated damages only under the wrongful death category, not

14

under the personal injury category.

If Plaintiffs had a "general claim for noneconomic damages from the loss of their child" that was distinct from their "more specific claim for noneconomic damages as provided by Utah's wrongful death statute," Defendant contends that they were required to indicate on their Standard Forms 95 a sum for those damages that were not wrongful death damages.  "The [FTCA] requires that each claim and claimant meet the prerequisites for maintaining a suit against the government . . . .  If the claimant fails to provide a sum certain within the claim, the administrative claim fails to meet the statutory prerequisite to maintaining a suit against the government, and leaves the district court without jurisdiction to hear the case."  *See Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) (internal quotation and citation omitted); *see also* 28 U.S.C. § 2675.

Even though Plaintiffs failed to fill in a specific value for personal injury damages, their Addendum to Standard Form 95, stated that "as a result of the [doctors'] negligence, Plaintiffs . . . have suffered the injuries described above, including funeral expenses and general damages of pain and suffering, loss of affection, loss of companionship, and loss of happiness of association. Plaintiffs argue that they did not put an amount for personal injury damages because Sanchez did not suffer any personal injury.  Plaintiffs claim that their damages were mental anguish resulting from the alleged wrongful death of their unborn child.  Plaintiffs damages for medical negligence and wrongful death are interrelated given that the result of the alleged medical negligence was the death of Plaintiff's unborn child.  Plaintiff's gave an exhaustive description of those claims in their Addendum.

Given the level of detail provided in Plaintiffs' Addendum and the interrelated nature of

the damages, the court finds no prejudice to the government from Plaintiffs' failure to list damages in the personal injury category.  The court concludes that Plaintiffs' Standard Form 95 and their attached Addendum adequately notified Defendant that Plaintiffs were bringing a medical negligence claim with associated damages, not just a wrongful death claim. Accordingly, the court finds no jurisdictional bar to Plaintiff pursuing damages for Plaintiffs' mental distress associated with their medical negligence claim.

## CONCLUSION

Based on the above reasoning, Plaintiffs' Motion to Certify Question of Law to the Utah Supreme Court is GRANTED.  This court requests the Utah Supreme Court to answer the following certified question, if it elects to do so: Does Utah's wrongful death statute allow an action for the wrongful death of an unborn child?

As a result of the court's determination to certify this question to the Utah Supreme Court, the court stays its ruling on the wrongful death damages issue raised in Defendant's Motion in Limine to Exclude From Trial All Evidence Regarding Plaintiffs Miguel Carranza and Amelia Sanchez's Damages for Wrongful Death until the Utah Supreme Court rules on the certification order.  The court also strikes the pending May 27, 2009 trial date.  The court will reset the trial date accordingly.

Pursuant to Rule 41(d) of the Utah Rules of Appellate Procedure, the Clerk of Court shall transmit a copy of this certification order, under this court's official seal, to the Utah Supreme Court.  The Clerk of Court shall also certify a copy of any portion of the record in this case as may be directed by the Utah Supreme Court.

DATED this 14th day of May, 2009.

_____
DALE A. KIMBALL
United States District Judge