IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MIGUEL CARRANZA and AMELIA SANCHEZ, <br><br> Plaintiffs, <br><br> v. <br><br> MOUNTAINLANDS HEALTH CLINIC, ET AL., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO RECONSIDER <br><br> Case No. 2:07CV291DAK <br><br> Judge Dale A. Kimball |

This matter is before the court on Plaintiffs Miguel Carranza and Amelia

Sanchez's Motion to Reconsider this court's April 11, 2012 Findings of Fact and Conclusions of

Law entered in connection with the bench trial heard by this court on March 27-29, 2012.  The

parties have fully briefed the motion.  Having carefully considered the materials submitted by the

parties and the law and facts related to the motion.

Plaintiffs filed their motion on June 19, 2012.  Because Plaintiffs filed their

motion more than twenty-eight days after the entry of judgment, the court construes the motion

as a Motion for Relief from Judgment under Rule 60 of the Federal Rules of Civil Procedure

rather than a Motion to Alter or Amend a Judgment under Rule 59 of the Federal Rules of Civil

Procedure.

Rule 60(b) of the Federal Rules of Civil Procedure provides several grounds for

relief from a final judgment or order, including mistake, newly discovered evidence, fraud, the

judgment is void, the judgment is satisfied, and any other reason that justifies relief.  Fed. R. Civ.

P. 60(b).  However, relief under Rule 60(b) "is extraordinary and may only be granted in

exceptional circumstances." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999).  "A

plaintiff must overcome a higher hurdle to obtain relief from a post-judgment motion than on

direct appeal from a judgment."  *LeFleur v. Teen Help*, 342 F.3d 1145, 1153 (10th Cir. 2003).  In

addition, a plaintiff may not merely rehash arguments that were already addressed and ruled on

by the court.  *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

When a party relies on new evidence to obtain relief under Rule 60(b)(2), they

must show all of the following:  "(1) the evidence was newly discovered since the trial; (2) the

moving party was diligent in discovering the new evidence; (3) the newly discovered evidence

could not be merely cumulative or impeaching; (4) the newly discovered evidence is material;

and (5) a new trial with the newly discovered evidence would probably produce a different

result."  *Zurich North America v. Matrix Serv., Inc.*, 426 F.3d 1281, 1290 (10th Cir. 2005).

Applying the standards under Rule 60(b), the court concludes that Plaintiffs have

failed to meet their burden.  Plaintiffs have not asserted anything or provided any materials that

would make this court modify its prior ruling.  Most of Plaintiff's motion rehashes arguments

made by their counsel at trial, which were fully considered and ruled upon by the court in its

prior decision.  Plaintiffs do not allege that any of the evidence presented in connection with their

motion was discovered after the date of the trial.  Mrs. Sanchez's medical records were in

evidence at trial and discussed at length by witnesses and counsel.  The court has reviewed these

records again and finds that they do not support the allegations made by Plaintiffs.  Plaintiffs

continue to argue that there were breaches in the standard of care on issues in which their own

expert changed his opinion at trial.   In their reply memorandum, Plaintiffs allege that Mrs.

Sanchez had gestational diabetes and she was given no care for the condition.  However, the

medical records submitted demonstrate that her results were normal.  Plaintiffs also persist in

claiming that Dr. Dizon-Thompson stated that Mrs. Sanchez may have preeclampsia, but this is

not supported by any of the evidence.   Mountainlands sent Mrs. Sanchez  to Dr. Dizon-

Thompson because she was 39 and had developed preeclampsia in her prior two pregnancies, but

there was never any evidence of preeclampsia in Mrs. Sanchez's pregnancy at issue in this case.

In connection with their motion to reconsider, Plaintiffs have submitted letters

from friends and family regarding the events at the hospital on April 19 and 20, 2006.  These

letters were not introduced at trial and were prepared in connection with Plaintiffs' motion to

reconsider.  Plaintiffs assert that these witnesses were willing to testify at trial, but their trial

counsel told them it was not necessary.  "If a party, through negligence or a tactical decision, fails

to present evidence that was available, it may not find refuge under Rule 60(b)(2)." *Lyons v.

Jefferson Bank & Trust*, 994 F.2d 716, 728 (10th Cir. 1993).  The court also notes that the

evidence is cumulative and submitted only to rebut the testimony of Dr. White.  At trial, Mr.

Carranza testified that he witnessed the birth and that the umbilical cord was not around the

baby's neck.  The court, however, found the testimony of Dr. White more credible.  Dr. White

testified that in order to deliver the baby, he had to cut the cord because it had halted any

progression the baby could make in the birthing canal.  He then testified that after the cord was

cut, and the baby was able to come out, he showed the baby to those in the room.  It is therefore

not inconsistent that those in the room did not see the baby with the umbilical cord around its

neck.  The cord had to be cut before the baby could even be delivered.

Plaintiffs also included photographs of the baby, which they state demonstrate the post-mature appearance of the baby. However, the court already heard evidence on this issue and the photographs are cumulative of witness testimony regarding the appearance of the baby. The evidence at trial demonstrated that the baby had the appearance of a post-mature baby because it had been dead for so many hours before it was delivered. Moreover, there was testimony that the baby could not be considered post-mature because of the birth's close proximity to the baby's due date. Although Plaintiffs appeared to challenge whether her due date was correct, there was no credible evidence to suggest that the due date was not correct. The court, therefore, does not find the photographs to be persuasive evidence regarding the cause of the baby's death.

Plaintiffs further argue that there was fraud because Defendants claim that a meeting of the doctors occurred with respect to her pregnancy on February 22, 2006, but the meeting is not reflected in her file. The documents submitted by Plaintiffs demonstrate a meeting took place on February 22, 2006. It is listed on a line in her records between an office visit on February 16, 2006, and a notation of results on an ultrasound that were entered on March 2, 2006. The fact that the doctor's meeting does not appear on other records, such as a list of her office visits or a list of her payments for office visits, makes sense because it was a doctor's meeting not an office visit. There was also credible evidence regarding this meeting presented at trial. The court concludes that there are no grounds for finding fraud.

The court concludes that none of the evidence presented by Plaintiffs would produce a different result. Plaintiffs believe that Mrs. Sanchez had conditions during her pregnancy that are not supported by the medical records. Plaintiffs believe that Mrs. Sanchez should have been induced earlier, but there was no medical evidence presented to support that

position.  Plaintiffs contest whether she was told to go to the hospital when she called

Mountainlands on April 17, 2006.  While the court found the evidence at trial credible that she

was told to go, the symptoms she called with were the same as they had been at her prior

appointment.  At that time, there were no grounds for being induced, no evidence of fetal

distress, and no risk of fetal demise.  There was no such evidence presented to medical

professionals until Mrs. Sanchez arrived at the hospital on April 19, 2006.

Plaintiffs further argue that Dr. Delaney lied about whether Mrs. Sanchez should

have another office visit in one week at the end of her pregnancy.  However, his notes

demonstrate that he told her to return in one week and he credibly testified that because she was

seen on a Friday, the appointment date she got appeared to be more than one week because of the

ensuing weekends.  There is no evidence supporting the argument that she was not seen weekly

at the end of her pregnancy and there is no evidence demonstrating that making an appointment

for ten days after her last appointment made any difference in the outcome.

Plaintiffs also take issue with the fact that she was not induced on April 19, 2006

when she was told that the baby had died.  While the court can sympathize with the difficulty of

that situation, there was no evidence that this breached a standard of care or was against any

protocol.  The fact that Mrs. Sanchez had to wait to be induced after the baby had died did not

change the outcome.

The court understands that the loss of a child like this is devastating and Plaintiffs

are understandably upset.  But the evidence at trial demonstrated that the death of Plaintiffs' baby

was the result of a nuchal cord event that unfortunately cannot be avoided, not the result of

medical negligence.  Accordingly, Plaintiffs' Motion for Reconsideration of this court's April 11,

2012 Findings of Fact and Conclusions of Law is DENIED.

DATED this 3rd day of August, 2012.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge